1  **JOSEPH R. CRUSE, JR.** (CA SBN 163982)
   Attorney at Law
2  301 N. Palm Canyon Dr., Suite 103-339
   Palm Springs, CA 92262
3  Telephone: (310) 598-3811
4  Email: jcruse@jcruselaw.com

5  Attorney for Plaintiff;
   *Carlos George*
6

7

8              UNITED STATES DISTRICT COURT
9          FOR THE CENTRAL DISTRICT OF CALIFORNIA
10

11 | CARLOS GEORGE,              ) Case:
12 |                             )
   |        Plaintiff,           ) COMPLAINT FOR:
13 |                             )
14 |    vs.                      )   1. VIOLATION OF SECURITIES
   |                             )      EXCHANGE ACT OF 1934 (15
15 | RAMON GOVEA,                )      U.S.C. § 78j & RULE 10b-5);
   |                             )   2. FRAUD (INTENTIONAL
16 |        Defendant.           )      MISREPRESENTATION);
17 |                                  3. VIOLATION OF
                                         CALIFORNIA
18                                       CORPORATIONS CODE §
                                         25401;
19                                    4. UNFAIR BUSINESS
                                         PRACTICES (Cal. Bus. & Prof.
20                                       Code § 17200); AND
                                      5. UNFAIR BUSINESS
21                                       PRACTICES (Cal. Bus. & Prof.
22                                       Code § 17200); and
                                      6. NEGLIGENT
23                                       MISREPRESENTATION
24

25     Plaintiff, **Carlos George** ("Plaintiff"), by and through his undersigned counsel,
26 alleges against **Ramon Govea** ("Defendant(s)") as follows:
27

28

---

1
COMPLAINT

# I. JURISDICTION AND VENUE

1. This Court has subject matter jurisdiction under 28 U.S.C. § 1331 (federal question) and 15 U.S.C. § 78a (securities fraud).

2. The Court has supplemental jurisdiction over the state law claims under 28 U.S.C. § 1367.

3. Venue is proper under 28 U.S.C. § 1391(b) as Defendant conducted business and committed fraudulent acts within the Central District of California.

4. The Court has personal jurisdiction over Defendant as he transacted business and engaged in fraudulent activity affecting individuals in California.

# II. PARTIES

5. Plaintiff Carlos George, an individual residing in the City of Sunland, County of Los Angeles, California, is a victim of an investment fraud scheme perpetrated by Defendant.

6. Defendant Ramon Govea is an individual located in Coral Springs, Florida, who engaged in fraudulent investment solicitation through email communications.

# III. FACTUAL ALLEGATIONS

7. Beginning in September 2021, Defendant contacted Plaintiff via email with an alleged investment opportunity promising high returns investing in Non-Fungible Tokens ("NFT(s)") with him.

8. Specifically, Defendant entered into a loan with Plaintiff where Plaintiff gave Defendant $100,000.00 in exchange for $120,000.00 return in only six months. This loan was secured by a non-fungible token, known as Bored Ape Yacht Club ("BAYC").

9. At the six month period, Defendant paid out to Plaintiff his promised $120,000.

10. In order to gain further confidence, Defendant informed Plaintiff that the BAYC NFT he invested in was now worth $136,000.

11. Defendant further represented himself as an expert in NFT's, informing Plaintiff of millions of dollars in his NFT holdings to gain Plaintiff's trust in allowing him to manage his money in exchange for a twenty percent (20%) share of the profits.

12. Defendant provided this misleading valuation to induce Plaintiff's confidence.

13. Relying on Defendants' representations of being a "savvy investor in cryptocurrencies and NFTs," Plaintiff transferred $35,352.55 to Defendant in cryptocurrency over the period of January 23, 2022 through February 4, 2022.

14. On or about October 7, 2024, Plaintiff requested an update about the investment of the cryptocurrency given to Defendant to manage.

15. After receiving the email, Defendant began making up excuses why he could not account for Plaintiff's money.

16. Defendant continued, and continues to refuse to account for any of Plaintiff's money and/or return any portion of the principal investment or profits, and subsequently cut off communication.

## IV. CAUSES OF ACTION

### FIRST CAUSE OF ACTION

### VIOLATION OF SECURITIES EXCHANGE ACT OF 1934

### (15 U.S.C. § 78j & RULE 10b-5)

17. Plaintiff hereby re-alleges and incorporates Paragraph 1 - 16 inclusive, as though fully set forth herein.

18. Defendant, directly and indirectly, by use of the means and instrumentalities of interstate commerce and the mails, and in connection with the purchase and sale of securities, employed devices, schemes, and artifices to defraud, made untrue statements of material facts and omitted to state material facts necessary in order to

make the statements made, in light of the circumstances under which they were made, not misleading, and engaged in acts, practices, and courses of business which operated as a fraud and deceit upon Plaintiff, in violation of Section 10(b) of the Exchange Act (15 U.S.C. § 78j(b)) and Rule 10b-5 (17 C.F.R. § 240.10b-5).

19. The NFTs offered and sold by Defendant to manage were investment contracts and therefore securities under the meaning of the Exchange Act and established U.S. Supreme Court precedent, including *SEC v. W.J. Howey Co.*, 328 U.S. 293 (1946). Specifically, the purchase of the NFTs involved:

(a) an investment of money;

(b) in a common enterprise;

(c) with a reasonable expectation of profits;

(d) to be derived from the efforts of others, namely the Defendants' development, promotion, and management of the NFT project.

20. Defendant knowingly and willfully made material misstatements and omissions in the course of offering and selling the NFTs to Plaintiff and the public, including but not limited to:

a. Promoting the NFTs as scarce and appreciating assets while secretly diverting or reserving additional NFTs for insiders or resale;

b. Claiming that the NFT project would deliver ongoing functionality or utility, while having no intent or capacity to deliver such outcomes;

c. Representing that the NFTs were part of a vibrant and growing market while engaging in manipulative practices to inflate perceived demand and value;

d. Failing to disclose insider sales or that Defendant was actively offloading NFTs or associated tokens while making bullish statements about the project's future.

21. Defendant made these false and misleading statements and omissions with scienter—that is, with the intent to deceive, manipulate, or defraud Plaintiff and other purchasers of the NFTs, or with reckless disregard for the truth.

22. Plaintiff reasonably relied on Defendants' material misrepresentations and omissions in deciding to purchase the NFTs, believing them to be legitimate investments in a functioning and future-facing digital ecosystem.

23. As a direct and proximate result of Defendants' fraudulent conduct, Plaintiff has suffered damages in an amount to be determined at trial, including but not limited to the loss in value of the NFTs, loss of use of invested funds, and related costs.

24. Plaintiff is entitled to all relief available under the Securities Exchange Act of 1934, including but not limited to rescission, restitution, actual and compensatory damages, interest, attorneys' fees, and such other relief as the Court deems just and proper.

## SECOND CAUSE OF ACTION
## FRAUD
## (INTENTIONAL MISREPRESENTATION)

25. Plaintiff hereby re-alleges and incorporates Paragraph 1 - 24 inclusive, as though fully set forth herein.

26. In or around October 2021, to induce Plaintiff to trust Defendant, Govea entered into a business loan agreement with Plaintiff, whereby Plaintiff lent Defendant Govea $100,000.00.

27. The terms of the loan gave Plaintiff a return of $120,000 in only six-months.

28. The loan was secured with a Bored Ape Yacht Club NFT which Govea initially valued at $114,000. While Plaintiff was still contemplating the transaction, Govea told Plaintiff the value of the NFT has risen to $136,000, and that his personal NFT holdings were valued at $1.5 million.

29. With Govea's updates of increased value, Plaintiff loaned Govea the $100,000 he desired.

30. When the loan became due and payable in six months Govea paid Plaintiff his promised $120,000.00.

31. In January 2022, after the loan was complete, Govea told Plaintiff that he would manage Plaintiff's money in NFT's, with the agreement that Govea would receive 20% of the profits.

32. In response, Plaintiff entrusted Govea transferred crypto currency in Eretheum valued at USD $35,352.55.

33. Although Plaintiff did not receive any reports or updates on the monies that he gave Gove to manage for him, he trusted his investments with him in light of Govea's self-proclaimed experience and success.

34. On October 7, 2024, Plaintiff asked Govea about the current status of the NFT's he entrusted to him to manage.

35. Govea responded promptly to Plaintiff and informed Plaintiff that he would be happy to involve an auditor to calculate the current value of the remaining and the value of any sold assets.

36. Govea further stated that he could have the audit completed within 15 business days and the value sent to him within 30-40 business days of the completion of the audit.

37. On October 9, 2024, Plaintiff asked Govea to forward the current location(s) of the NFT's he purportedly was managing for him.  Plaintiff further questioned the necessity of retaining an auditor as he thought they were just looking at NFT valuation for Plaintiff's personal use which shouldn't be a complex business matter which shouldn't necessitate a formal audit.

38. Plaintiff further questioned why, once a transaction to his wallet is initiated, he shouldn't see the funds in within minutes or up to an hour at most.

39. Plaintiff received no response from Govea to his email.

40. On October 16, 2024, Plaintiff again emailed Govea requesting the information and status.

41. On October 18, 2024, Govea responded to Plaintiff's email stating that he would respond with answers by October 22, 2024.

42. Plaintiff received no response from Govea as was promised.

43. Plaintiff emailed Govea again on December 27, 2024 requesting information. Plaintiff, once again, received no response from Govea.

44. At this point it became clear to Plaintiff that Govea had taken his funds and used them for his own personal use and not to invest and manage for Plaintiff as Govea had represented.

45. Govea induced Plaintiff to believe he intended to manage his funds for him and invest in NFT's, with the intent to deceive Plaintiff.

46. Plaintiff, at the time he gave Govea his money to invest in NFT's, believed Govea would manage his money in NFT tokens and did not know that Govea had no intention of doing so.

47. Plaintiff's reliance on Govea's intention to manage his money in NFT tokens were reasonable in light of the fact that Govea had successfully completed a previous agreement with him, and represented to Plaintiff that he knew the custom and practice of such businesses.

48. In reliance on Govea's representations, Plaintiff transferred crypto currency in Eretheum valued at USD $35,352.55, to Govea to manage for investments in NFT's.

49. There was no way Plaintiff could know Govea's secret intention to not honor his promises and obligations.

50. Through Govea's actions when Plaintiff pressed Govea for details of his investments, it was learned that Govea's representations to Plaintiff was false.

51. The true facts are that Govea actually used Plaintiff's money not to manage NFT investments, but for his own personal interests.

52. When Govea made his statements to Plaintiff in January 2022, Govea was aware at all times money he had received from Plaintiff were to be invested and managed for Plaintiff, and not for Govea's personal use without his knowledge.

53. Govea intended that Plaintiff rely on his representation that he would invest and manage Plaintiff's money.

54. Plaintiff reasonably, justifiably, and in good faith, relied on Govea's representation that he manage his money and further provide accurate accountings to him when requested. Plaintiff did not have any reason to know, and had no reason to question the truthfulness or accuracy of Govea's representation.

55. The reliance on Govea's false representation was a substantial factor in causing harm to the Plaintiff. If Plaintiff had any reason to believe that Govea's representations were false, he would have acted in a more timely manner to ensure this payments were accounted for and returned to him.

56. Govea's false representation was not discovered until December 27, 2024, wherein Govea, failed to respond any further to Plaintiff's inquiries in hopes that Plaintiff would go away.

57. As a direct and proximate result of the acts of Govea described above, Plaintiff has been damaged in an amount to be determined according to proof, including, but not limited to money given to Plaintiff.

58. Plaintiff has also been damaged in an amount to be determined according to proof, representing any royalties owed to him stemming from any NFT's that Govea may have purchased with his money.

59. Plaintiff is further entitled to the imposition of a constructive trust on any funds that Ramon Govea has recovered or will recover from other third parties, including, but not limited, to disgorgement of profits and a tracing with respect to any profits realized by Defendant as a result of such conduct.

60. In performing the acts alleged herein, Defendant willfully, oppressively, fraudulently and maliciously acted, with conscious disregard of the rights of, and

with the intent to cause injury to Plaintiff thereby warranting the imposition of punitive damages.

### THIRD CAUSE OF ACTION
### VIOLATION OF CALIFORNIA CORPORATIONS CODE § 25401

61. Plaintiff hereby re-alleges and incorporates Paragraph 1 - 60 inclusive, as though fully set forth herein.

62. At all relevant times, Defendant offered and sold securities to Plaintiff within the meaning of California Corporations Code § 25019. Specifically, Defendants solicited Plaintiff to invest funds in purported opportunities involving the purchase, management, and resale of non-fungible tokens ("NFTs") using cryptocurrency assets. These investment interests constituted "investment contracts" and thus "securities" under California law.

63. Pursuant to California Corporations Code § 25401, it is unlawful for any person to offer or sell a security in this state by means of any written or oral communication that includes an untrue statement of a material fact or omits to state a material fact necessary to make the statements made, in light of the circumstances under which they were made, not misleading.

64. In connection with the offer and sale of the securities described herein, Defendant made untrue statements of material fact and/or omitted to disclose material facts, including but not limited to the following:

    a. Falsely representing that Defendant was an experienced cryptocurrency managers with a successful track record of managing NFT-related investments;

    b. Falsely representing that the Plaintiff's funds would be used exclusively for purchasing NFTs through specified platforms;

    c. Failing to disclose that Defendant had no verifiable credentials or institutional backing in crypto asset management;

      d. Failing to disclose that the funds would be diverted or misused for personal expenditures or unrelated ventures;

      e. Falsely representing the safety and profitability of the investment.

65. Plaintiff reasonably relied on these representations in deciding to invest $35,352.55 in cryptocurrency under Defendants' management.

66. As a direct and proximate result of Defendants' violations of Corporations Code § 25401, Plaintiff has suffered damages in an amount to be proven at trial, including the loss of the investment and anticipated gains.

67. Pursuant to California Corporations Code § 25501, Defendant is liable to Plaintiff for rescission or damages, including interest at the legal rate, and reasonable attorneys' fees and costs.

68. Defendant acted with fraud, oppression, and malice, and therefore Plaintiff also seeks punitive damages as allowed by law.

69. Plaintiff is informed and believes, and on that basis alleges, that unless enjoined, Defendant will continue to dissipate, conceal, or transfer the cryptocurrency assets obtained from Plaintiff and other investors through the use of various digital wallets and cryptocurrency exchanges.

70. Accordingly, Plaintiff seeks preliminary and permanent injunctive relief restraining Defendant and all persons acting in concert with him from transferring, selling, converting, or otherwise disposing of cryptocurrency or other digital assets held by him in any wallet or account reasonably believed to be controlled by or associated with Defendant.

71. Plaintiff further seeks an order directing Defendants to disclose all current wallet addresses, exchange accounts, and the locations of all cryptocurrency and NFT assets derived from investor funds.

///
///
///

## FOURTH CAUSE OF ACTION
## UNFAIR BUSINESS PRACTICES (Cal. Bus. & Prof. Code § 17200)

72. Plaintiff hereby re-alleges and incorporates Paragraph 1 - 71 inclusive, as though fully set forth herein.

73. California Business and Professions Code §§ 17200 et seq. ("UCL") prohibits unlawful, unfair, and fraudulent business acts and practices.

74. Defendants' conduct, as alleged herein, constitutes unlawful, unfair, and fraudulent business practices within the meaning of Business and Professions Code § 17200, including but not limited to:

    a. Engaging in the unlawful offer and sale of securities by means of material misrepresentations and omissions, in violation of California Corporations Code § 25401;

    b. Fraudulently inducing Plaintiff to invest in a cryptocurrency-based NFT investment scheme under false pretenses;

    c. Misappropriating investor funds for undisclosed personal or unauthorized uses;

    d. Failing to disclose the true qualifications and credentials (or lack thereof) of Defendant as an investment manager;

    e. Omitting material facts necessary to make the investment representations not misleading.

75. Each of the above acts constitutes a separate and independent violation of the UCL. The conduct was unlawful in that it violated California securities laws (Corp. Code § 25401), fraudulent in that it deceived Plaintiff and other potential investors, and unfair in that it offends established public policy and harms consumers without any countervailing benefit.

76. As a direct and proximate result of Defendants' unlawful, unfair, and fraudulent business practices, Plaintiff has suffered actual injury in fact and economic loss, including the misappropriation and loss of invested funds.

77. Pursuant to Business and Professions Code §§ 17203 and 17204, Plaintiff seeks an order of restitution for all money wrongfully obtained by Defendant from Plaintiff, and any other relief deemed proper by the Court.

78. Plaintiff also seeks an order enjoining Defendants from continuing to engage in the unlawful, unfair, and fraudulent business practices described herein, including but not limited to a temporary restraining order and/or preliminary injunction freezing cryptocurrency wallets and requiring Defendant to provide a full accounting of all digital assets obtained through his NFT investment scheme.

## FIFTH CAUSE OF ACTION
## NEGLIGENT MISREPRESENTATION

79. Plaintiff hereby re-alleges and incorporates Paragraph 1 - 78 inclusive, as though fully set forth herein.

80. Defendant, made representations to Plaintiff regarding his experience and qualifications in managing cryptocurrency investments, the nature of the NFT investment strategy, the use of Plaintiff's funds, and the expected returns.

81. These representations included, but were not limited to:
   a. That Defendant was experienced and successful in cryptocurrency and NFT investment management;
   b. That Plaintiff's funds would be used exclusively to acquire NFTs on reputable platforms;
   c. That the investment was secure and would yield substantial profits; and
   d. That the Defendant had protocols in place to safeguard investor funds.

82. Defendant made these representations without reasonable grounds for believing them to be true, and in fact, they were false when made. Defendants lacked the experience, infrastructure, and intent to manage the investments as represented.

83. Defendants made these misrepresentations in the course of a business transaction with Plaintiff, intending that Plaintiff rely on them in deciding to invest funds in the NFT scheme.

84. Plaintiff reasonably relied on Defendants' representations in deciding to invest $35,352.55 in cryptocurrency to be managed by Defendant for NFT investments.

85. As a direct and proximate result of Defendants' negligent misrepresentations, Plaintiff has suffered actual damages, including the loss of investment capital and expected returns, in an amount to be proven at trial.

86. Plaintiff is also entitled to interest, costs of suit, and such other relief as the Court deems just and proper.

## V. PRAYER FOR RELIEF

**DAMAGES AND RELIEF SOUGHT**

**WHEREFORE**, Plaintiff prays for judgment against Defendant(s) as follows:

A. Compensatory Damages in an amount exceeding $35,352.55, including lost principal and promised profits.

B. Punitive Damages for willful and malicious fraudulent conduct.

C. Rescission and Restitution of all investments made by Plaintiff.

D. Prejudgment and Post-Judgment Interest as permitted by law.

E. Attorneys' Fees and Costs pursuant to applicable law.

F. Any further relief the Court deems just and proper.

Dated: June 2, 2025               */s/ Joseph R. Cruse, Jr.*
                                  Joseph R. Cruse, Jr.,
                                  Attorney for Plaintiff,
                                  Carlos George

# **DEMAND FOR JURY TRIAL**

Pursuant to Rule 38(b) of the Federal Rules of Civil Procedure, Plaintiff hereby demands a trial by jury on all issues so triable.

DATED: June 2, 2025

*/s/ Joseph R. Cruse, Jr.*
Joseph R. Cruse, Jr.,
Attorney for Plaintiff,
Carlos George